UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ESTATE OF CAROL A. KENYON,
    *Plaintiff*,

v.

L + M HEALTHCARE HEALTH
REIMBURSEMENT ACCOUNT *et al.*,
    *Defendants*.

No. 3:19-cv-00093 (JAM)

**ORDER GRANTING MOTIONS TO DISMISS**

    Carol Kenyon needed an emergency medical flight from Puerto Rico to Florida. So she contacted an air ambulance operator, who in turn contacted her insurer, who in turn stated that the flight was a covered benefit. The air ambulance then flew Kenyon to Florida. Several months later, it turned out that Kenyon's insurer was only willing to pay about 5% of the air ambulance bill.

    Kenyon's estate now seeks to recover what it claims are the benefits owed to her under her insurance policy. It has asserted claims under both the federal Employee Retirement Income Security Act ("ERISA"), and for promissory estoppel under Connecticut state law. The defendants have moved to dismiss most of the claims, alleging that they are not properly pleaded against them and preemption. I agree with defendants' arguments and will therefore dismiss Count One as to defendant Triple S Blue Card and Counts Two, Three, and Four against all defendants. This case shall proceed solely on the estate's claim under Count One against the remaining defendants for wrongful denial of ERISA benefits.

## BACKGROUND

The following facts as alleged by the plaintiff in the complaint are accepted as true for purposes of ruling on defendants' motion to dismiss. Doc. #1. Plaintiff the estate of Carol Kenyon is the insured and named beneficiary of the L + M Healthcare Health Reimbursement Account ERISA insurance plan. Doc. #1 at 2 (¶¶ 1, 2). Defendant L&M Healthcare was Kenyon's employer, *id.* at 5-6 (¶ 28), and is a Connecticut company that sponsors the plan and is ultimately responsible for paying claims under the plan. *Id.* at 2 (¶ 6). Defendant Anthem Blue Cross Blue Shield is the plan administrator. *Ibid.* (¶ 2). Anthem is also the designated claims administrator for the plan. *Ibid.* (¶ 4). Defendant Triple S Blue Card is a Puerto Rico company. *Ibid.* (¶ 5). The estate alleges that the plan designated Triple S as the entity "to decide the appeal of the denial of benefits at issue in this matter," and that Triple S "participated in and approved the decision-making process and failed to process the appeal of the denial at issue in this matter." *Ibid.*

On March 13, 2017, non-party CustomAir Ambulance was contacted about carrying Kenyon on an emergency medical flight. *Id.* at 3-4 (¶¶ 12-13). CustomAir became Kenyon's agent in obtaining reimbursement for the flight, *ibid.* (¶ 12), and received preapproval from Anthem to provide the flight as a medically necessary covered benefit under Kenyon's plan. *Id.* at 4 (¶¶ 14-15). CustomAir relied on this information to fly Kenyon from Puerto Rico to Florida on March 16. *Ibid.* (¶¶ 16-17).

CustomAir then submitted a claim for benefits, billing the plan the customary and reasonable amount of $437,320. *Ibid.* (¶¶ 18-19). On September 5, the plan issued an explanation

of benefits that "substantially denied the claim" and reimbursed CustomAir for only $20,300. *Ibid.* (¶ 20).[1]

Still working on behalf of Kenyon, CustomAir appealed. *Id.* at 5 (¶ 23). Apparently working on the basis of the "Summary Plan Description," which the complaint alleges "states that out-of-area appeals should be handled by the [Blue Cross] provider that initiated the service," *ibid.* (¶ 24), CustomAir first appealed to Triple S on November 28. *Ibid.* (¶¶ 23-24). Triple S refused to consider the appeal because it had not adjusted the original claim. *Ibid.* (¶ 24). An appeal was then made to Anthem on December 5.[2] *Ibid.* (¶¶ 23, 25). CustomAir followed up after Anthem had not responded within 60 days, and was advised that Anthem would not process the appeal. *Ibid.* (¶ 25). CustomAir then contacted an Anthem vice president, who referred CustomAir to Anthem's risk management division. *Ibid.* (¶ 25). Anthem's risk management division also did not process the appeal. *Ibid.* (¶ 26).

Eventually, Kenyon's estate filed suit against the plan, Anthem, Triple S, and L&M Healthcare. Doc. #1. The estate has asserted claims for wrongful denial of benefits under ERISA, *id.* at 7 (¶¶ 40-47) (Count One), breach of fiduciary duty under ERISA, *id.* at 7-8 (¶¶ 48-43) (Count Two), equitable estoppel under the federal common law of ERISA, *id.* at 8-9 (¶¶ 44-51) (Count Three), and promissory estoppel under Connecticut common law, *id.* at 9-10 (¶¶ 52-57) (Count Four). Triple S has moved to dismiss Count One on the ground that it is an improper

---

[1] CustomAir received a $20,300 check on October 17. Doc. #1 at 5 (¶ 22).
[2] The complaint does not make it entirely clear who appealed to Anthem and when. The complaint first states that "[p]laintiff appealed the substantial denial through the one mandatory appeal on or about . . . December 5, 2017 (to Anthem). CustomAir, as Ms. Kenyon's authorized representative, continued to handle the appeal." Doc. #1 at 5 (¶ 23). The complaint then states that "Ms. Kenyon then appealed to Anthem, which did not respond within the required sixty days. CustomAir then followed up . . . ." *Ibid.* (¶ 25). Consequently, it is unclear whether it was CustomAir that first contacted Anthem on Kenyon's behalf on December 5, or whether it was Kenyon herself who first contacted Anthem, with CustomAir then following up on her behalf. Because the parties have not taken issue with any distinction between Kenyon and CustomAir at this stage, however, this ambiguity does not affect my analysis of defendants' motions.

ERISA defendant. Doc. #36-1 at 1. The remaining defendants have moved to dismiss Counts Two, Three, and Four on the ground that they are inadequately pleaded and, in the case of Count Four, preempted by ERISA. Doc. #26-1 at 1, 9. The estate has consented to the dismissal of Count Two, Doc. #30 at 3, and Triple S has adopted the other defendants' arguments as to Counts Three and Four. Doc. #36 at 1.

## DISCUSSION

For purposes of a motion to dismiss for failure to state a claim, the Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018). This "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Because the focus must be on what facts a complaint alleges, a court is "not bound to accept as true a legal conclusion couched as a factual allegation" or "to accept as true allegations that are wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014). In short, my role in reviewing a motion to dismiss under Rule 12(b)(6) is to determine if the complaint—apart from any of its conclusory allegations—alleges enough facts to state a plausible claim for relief.

### *ERISA benefits claim against Triple S (Count One)*

Triple S argues that Count One should be dismissed against it because it is not a proper defendant to a claim for benefits under asserted under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Doc. #36-1 at 6. The estate objects, arguing instead that Triple S is a claims administrator properly subject to suit under § 502(a)(1)(B). I agree with Triple S.

4

The Second Circuit has recently clarified the scope of what kind of entities are proper defendants under § 502(a)(1)(B). Although it had previously held that "only the plan and the administrators and trustees of the plan in their capacity as such may be held liable," *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989), the Second Circuit has revised this view to make clear that "where the claims administrator has 'sole and absolute discretion' to deny benefits and makes 'final and binding' decisions as to appeals of those denials, the claims administrator exercises total control over claims for benefits and is an appropriate defendant in a § 502(a)(1)(B) action for benefits." *N.Y. State Psychiatric Ass'n v. UnitedHealth Grp.*, 798 F.3d 125, 132 (2d Cir. 2015). Because there is no dispute that Triple S was not a plan or plan administrator, the question of Triple S's role as a defendant turns on whether it has exercised the control over benefits necessary to be a proper defendant under § 502(a)(1)(B). *See ibid.* (discussing ERISA's statutory text as silent as to which types of entities may be sued under ERISA, focusing instead on control of benefits under plan).

The estate argues that Triple S falls within this category. In its complaint, the estate alleges that "the Plan designated Triple S as the entity to decide the appeal of the denial of benefits at issue in this matter," and that Triple S "participated in and approved the decision-making process and failed to process the appeal of the denial at issue." Doc. #1 at 2 (¶ 5). Accordingly, the estate grounds its argument in the text of the plan, which I take to be integral to the estate's complaint. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). As the estate sees it, Triple S's role comes from the plan's "Blue Card" program. The plan provides that when a plan member travels outside the Anthem's ordinary coverage area (as Kenyon did), claims for benefits may be processed through a "Host Blue"—a Blue Cross Blue Shield affiliate with which Anthem contracts. Doc. #37-1 at 52. One system for processing claims is through the Blue Card

5

program. *Ibid.* The plan provides that under the Blue Card program, when an insured receives services within the Host Blue's service area, "the Claims Administrator will still fulfill its contractual obligations. But, the Host Blue is responsible for: (a) contracting with its Providers; and (b) handling its interactions with those Providers." *Ibid.* The plan also provides that out-of-state appeals must be filed "with the Host Plan," meaning that "[p]roviders must file appeals with the same plan to which the claim was filed." *Id.* at 57. On the estate's understanding, this contractual language establishes—in conjunction with the complaint—that Kenyon was outside the Anthem service area when she was in Puerto Rico, Triple S was the relevant Host Blue, and that under the Blue Card program it was Triple S who exercised the requisite control over Kenyon's claims for benefits to be a proper defendant to this action. Doc. #37 at 5-7.

Even assuming the adequacy of the estate's other allegations to support this position in conjunction with its favored contract language, the estate's position is still mistaken because it bypasses other important language in the plan. First, as Triple S correctly points out, there is substantial language in the plan that significantly qualifies the role of a Host Blue. *See* Doc. #38 at 2-5. The sentence stating that the Host Blue is responsible for contracting and handling interactions with its providers is immediately preceded by language providing that "the Claims Administrator will still fulfill its contractual obligations," and followed by language stating that the amount an insured will ultimately pay for out-of-area services is the lower of either the charges a provider bills for services, or the price that "the Host Blue makes available to the Claims Administrator." Doc. #37-1 at 52.

Similarly, the provision stating that out-of-state appeals must be filed with a host plan is preceded by language stating that "[t]he Claims Administrator shall offer a single mandatory level of appeal and an additional voluntary second level of appeal," and followed by a section

6

headed "How Your Appeal will be Decided," which goes on to discuss what takes place "When the Claims Administrator considers Your appeal." Doc. #37-1 at 57-58 (capitalization in original).

ERISA plans are contracts, and courts use "familiar rules of contract interpretation" when addressing an ERISA plan. *Lifson v. INA Life Ins. Co. of N.Y.*, 333 F.3d 349, 353 (2d Cir. 2003) (*per curiam*). One such rule is that "the law of contract interpretation militates against interpreting a contract in a way that renders a provision superfluous or meaningless." *Danouvong ex rel. Estate of Danouvong v. Life Ins. Co. of N. Am.*, 659 F. Supp. 2d 318, 324 (D. Conn. 2009) (internal quotation marks and citation omitted); *see also Stern v. Oxford Health Plans, Inc.*, 2013 WL 3762898, at *11 (E.D.N.Y. 2013) (Bianco, J.). Accordingly, I am sensitive to the distinction the plan draws between a Host Blue and a claims administrator, and the plan's plain language vesting the claims administrator with the power to decide appeals, even if the appeals are filed elsewhere. *See Burke v. PriceWaterHouseCoopers LLP Long Term Disab. Plan*, 572 F.3d 76, 81 (2d Cir. 2009) (*per curiam*) ("a court must not rewrite, under the guise of interpretation, a term of the contract when the term is clear an unambiguous" (cleaned up)).

Moreover, I am also mindful of the plan's provision titled "Reservation of Discretionary Authority." Doc. #37-1 at 70. This section provides that "[t]he Claims Administrator shall have all powers necessary or appropriate to carry out its duties in connection with the operation of the Plan . . . . This includes, without limitation, the power to determine all questions arising under the Plan, [and] to resolve Member appeals . . . . The Claims Administrator's determination shall be final and conclusive . . . ." *Ibid.* Courts have recognized that clauses of this sort give the designated claims administrator the sort of final and binding discretion that make it a proper party to suit under ERISA. *See, e.g.*, *Schuman v. Aetna Life Ins. Co.*, 2017 WL 1053853, at *9-

7

*10, *13 (D. Conn. 2017). And so it is clear from the plan's language that Anthem as claims administrator is a proper § 502(a)(1)(B) defendant—a conclusion Anthem has not contested.

At the same time, the estate has not shown how, given this language vesting discretion with Anthem and distinguishing the role of Host Blue and claims administrator, Triple S is an appropriate defendant. It is true that the Second Circuit reserved decision as to "whether a claims administrator that exercises less than total control over the benefits denial process is an appropriate defendant under § 502(a)(1)(B)." *N.Y. State Psychiatric Ass'n*, 798 F.3d at 132 n.5. But trial courts within this Circuit have spoken to this issue, and have done so consistently: a claims administrator with only some discretion—but no final control over appeals—is not an appropriate defendant under § 502(a)(1)(B). *See, e.g.*, *Gallagher v. Empire HealthChoice Assurance, Inc.*, 339 F. Supp. 3d 248, 254-55 (S.D.N.Y. 2018) (collecting cases); *Moses v. Revlon Inc.*, 2016 WL 4371744, at *3 (S.D.N.Y. 2016) (Sullivan, J.). Therefore, even though the estate alleges that the plan designated Triple S as a claims administrator, the text of the plan itself does not show Triple S to have had the discretion that would make it a proper defendant in its capacity as a claims administrator.

This is not to say that no allegations could ever show Triple S to be a proper defendant. The Second Circuit's focus in *New York State Psychiatric Association* was on a potential defendant's degree of control over the ERISA benefits process, not simply the label that a potential defendant wore under an ERISA plan. *See* 798 F.3d at 132-33. The Supreme Court has observed that ERISA's analogous § 502(a)(3) "makes no mention at all of which parties may be proper defendants—the focus, instead, is on redressing the *act or practice* which violates any provision of ERISA." *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246 (2000) (cleaned up). And the Ninth Circuit has, extending caselaw that relied on *Harris Trust*,

8

*see Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1205-06 (9th Cir. 2011) (en banc), held that "*de facto* plan administrators that improperly deny or cause improper denial of benefits" may be sued under § 502(a)(1)(B). *Spinedex Phys. Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1297 (9th Cir. 2014).

But the estate has not made those kinds of allegations here. Rather, the extent of the estate's allegations outside the scope of the plan are that Triple S "participated in and approved the decision-making process and failed to process the appeal of the denial at issue in this matter," and that Triple S "refused to consider the appeal because it did not adjust the original claim." Doc. #1 at 2, 5 (¶¶ 5, 24). These sorts of conclusory allegations of some partial control do not show Triple S to have acted as anything approaching even the liberal standard of *de facto* plan administrator. *See Bushell v. UnitedHealth Grp. Inc.*, 2018 WL 1578167, at *8 (S.D.N.Y. 2018) (citing and distinguishing *Atzin v. Anthem, Inc.*, 2018 WL 501543, at *2-*3 (C.D. Cal. 2018) (detailed allegations of control establish *de facto* plan administrator)). Accordingly, absent allegations that could show Triple S to be a proper defendant under § 502(a)(1)(B), the estate cannot state a plausible ERISA claim against Triple S. I will therefore grant Triple S's motion to dismiss Count One against it.

### *ERISA estoppel claim (Count III)*

A claim for equitable estoppel under ERISA must plead "(1) material representation, (2) reliance and (3) damage," *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993), while an ERISA plaintiff "must satisfy four elements to succeed on a claim of promissory estoppel: (1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced." *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 85 (2d Cir. 2001) (cleaned up). Under either theory of estoppel (equitable or promissory), a plaintiff must also

9

plead "facts sufficient to satisfy an extraordinary circumstances requirement." *Ibid.*; *see also Lee*, 991 F.2d at 1009.

Defendants argue that the estate has not alleged extraordinary circumstances. Doc. #26-1 at 11-15; Doc. #36 at 1. The estate unsurprisingly disagrees, pointing to its allegation that "[e]xtraordinary circumstances exist because CustomAir has been paid less than 5% of the cost of the service it provided in reliance of Defendants' express promise of coverage after inducing CustomAir to perform the service by providing a pre-authorization." *See* Doc. #30 at 5 (citing Doc. #1 at 9 (¶ 50)).

Of course, the mere words "extraordinary circumstances" do not satisfy this element, as I am "not bound to accept as true a legal conclusion couched as a factual allegation." *See Iqbal*, 556 U.S. at 678. Rather, I am mindful that courts in this Circuit generally require plaintiffs "to allege either intentional inducement or deception, inuring to the benefit of the defendant." *Warren Pearl Constr. Corp. v. Guardian Life Ins. Co. of Am.*, 2008 WL 5329962, at *5 (S.D.N.Y. 2008); *see also Turcotte v. Blue Cross & Blue Shield of Mass., Inc.*, 2008 WL 4615903, at *8 (S.D.N.Y. 2008) (Sullivan, J.).

The estate argues that its claim should nonetheless be allowed to proceed because "Defendants' motivation for [misrepresenting the scope of its coverage] is a question of fact." Doc. #30 at 5. But the trouble for the estate is that it has not alleged anything about defendants' motivations to allow an inquiry into intentional inducement, let alone intentional inducement to benefit defendants. *See* Doc. # 1 at 4, 9 (¶¶ 14-16, 45-50). At the same time, the mere allegation that the estate only received pennies on the dollar for its claim does not hold up as an "extraordinary circumstance" in the face of decisions finding no extraordinary circumstances when insurers fully deny coverage. *See Turcotte*, 2008 WL 4615903, at *8; *see also Aramony v.*

10

*United Way Replacement Benefit Plan*, 191 F.3d 140, 152 (2d Cir. 1999) (extraordinary circumstances require conduct beyond ordinary elements of estoppel claim). The estate has not pointed to anything else in its complaint to support an allegation that extraordinary circumstances exist, so in light of my conclusion that the allegations at issue do not plausibly allege the existence of extraordinary circumstances, I will dismiss the estate's claim for estoppel under ERISA.[3]

### *Connecticut promissory estoppel claim (Count IV)*

The estate has also sued defendants for promissory estoppel under Connecticut law. A plaintiff claiming promissory estoppel under Connecticut state law must prove (1) that the defendant did or said something intended to induce another party to believe that certain facts existed and to act on that belief, (2) that the plaintiff changed its position based on those facts, and (3) that doing so incurred some injury. *See McKinstry v. Sheriden Woods Health Care Ctr., Inc.*, 994 F. Supp. 2d 259, 266 (D. Conn. 2014).

To establish the first element, the plaintiff must "allege facts to show 'the existence of a clear and definite promise which a promisor could have reasonably expected to induce reliance.'" *Ibid.* (citing *Daimlerchrysler Ins. Co., LLC v. Pambianchi*, 762 F. Supp. 2d 410, 426 (D. Conn. 2011)); *see also Stewart v. Cendant Mobility Servs. Corp.*, 267 Conn. 96, 104-05 (2003). At the outset, the complaint does not allege any facts showing that Triple S had a role in approving the emergency flight or in telling CustomAir that the flight had been approved, *see* Doc. #1 at 4 (¶¶ 14, 15) (alleging that Anthem approved and authorized the flight and that "[d]efendants" informed CustomAir the flight was approved). Accordingly, I will dismiss the Connecticut promissory estoppel claim against Triple S for lack of any allegation that it made a

---

[3] Because I dismiss the estate's claim on this basis, I do not consider defendants' preemption or unreasonable reliance arguments as to the ERISA estoppel claim. *See* Doc. #26-1 at 9-11, 15-16.

clear and definite promise of coverage. *See Aesthetic & Reconstructive Breast Ctr., LLC v. United HealthCare Grp., Inc.*, 367 F. Supp. 3d 1, 5 (D. Conn. 2019).

The remaining defendants argue that the state law promissory estoppel claim is preempted as to them under ERISA. *See* Doc. #26-1 at 9. I agree.

Because this lawsuit began in federal court, defendants are seeking to invoke preemption under ERISA § 514(a), 29 U.S.C. § 1144(a). *See Aesthetic*, 367 F. Supp. 3d at 6. A defendant may invoke § 514(a) defensively to preempt and defeat any state law claims that "relate" to an ERISA plan. *See* 29 U.S.C. § 1144(a); *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016). As applied to common law causes of action, courts determine whether a state law claim "relates" to an ERISA plan by looking to whether the claim has an impermissible "connection with" an ERISA plan—that is, whether the claim would "govern[] . . . a central matter of plan administration," "interfere[] with nationally uniform plan administration," or "force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers." *Gobeille*, 136 S. Ct. at 943; *see Aesthetic*, 367 F. Supp. 3d at 7 & n.4. Putting this framework into practice, the Second Circuit has noted "a reluctance to find ERISA preemption where state laws do not affect the relationships among the core ERISA entities" like beneficiaries and administrators, and a tendency to find preemption of "state laws affecting the determination of eligibility for benefits, amounts of benefits, or means of securing unpaid benefits." *Stevenson v. Bank of N.Y. Co., Inc.*, 609 F.3d 56, 59-61 (2d Cir. 2010).

Under this rubric, whether § 514 preempts a claim for promissory estoppel depends on the position of the plaintiff who asserts it. The estate correctly points out that in *McCulloch Orthopaedic Surgical Services, PLLC v. Aetna Inc.*, 857 F.3d 141 (2d Cir. 2017), the Second Circuit held that in the analogous context of § 502 preemption, ERISA did not preempt the

promissory estoppel claim of a doctor who had not been assigned a patient's benefits and sought pre-approval from an ERISA plan. *Id.* at 151-52. And in *Aesthetic*, I found *McCulloch*'s reasoning to be one persuasive factor in holding that neither did § 514 preempt a non-assigned doctor's promissory estoppel claim against an insurer. *See* 367 F. Supp. 3d at 8-10.

But as I noted in *Aesthetic*, the assignment in each case mattered. *See id.* at 8. In this case, the plaintiff is not even a third-party medical provider, but rather the estate of Kenyon herself, suing on the basis of a dispute over the scope of Kenyon's own right to benefits under the plan. *See* Doc. #1 at 3-4 (¶¶ 12-15) (alleging defendants dealt with CustomAir as Kenyon's agent); Doc. #37-1 at 54-55 (authorizing assignments of benefits). The Second Circuit has said that beneficiaries are "core ERISA entities" falling within the scope of § 514 preemption. *Stevenson*, 609 F.3d at 59. And in line with this conclusion, courts in this Circuit have repeatedly held that where an ERISA beneficiary—or a medical provider assigned a beneficiary's rights under ERISA—invokes state common law to challenge the denial of a claim for benefits, § 514 preempts the claim. *See Chau v. Hartford Life Ins. Co.*, 167 F. Supp. 3d 564, 568, 571-72 (S.D.N.Y. 2016); *Star Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 291 (E.D.N.Y. 2014) (Bianco, J.).

*McCulloch* counsels a similar result. *McCulloch* applied the Supreme Court's two-prong framework from *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), to reach its conclusions on § 502 preemption. *See* 857 F.3d at 145-46. The parties here agree that both steps of the first prong are met—that is, the estate is capable of bringing a claim under § 502 and has done so. *See* Doc. #30 at 7-8; *McCulloch*, 857 F.3d at 146-48. That leaves the remaining aspect of the analysis: whether the estate's claim implicates some "other independent legal duty." 857 F.3d at 150. The claim does not. The *McCulloch* court held that an independent duty was created when

13

the doctor who sought the insurer's approval "was not a valid assignee of the plan," "had no preexisting relationship with Aetna," "was not required by the plan to pre-approve coverage for the surgeries that he performed," and "called Aetna for his own benefit to decide whether he would accept or reject a potential patient who sought his out-of-network services." 857 F.3d at 150-51.

Here, by contrast, CustomAir was acting as Kenyon's agent or assignee, Doc. #1 at 3-4 (¶ 12), and Kenyon had a preexisting relationship with defendants. Moreover, the plan unambiguously provided (in boldfaced, all-capitalized type) that when it came to air ambulance services, if a patient or non-network provider failed to "obtain the required precertification, a $500 or 50% penalty w[ould] apply." Doc. #37-1 at 24.[4] And to the extent that CustomAir might have been concerned whether, for its own sake, to accept a patient for out-of-network services, it would be CustomAir who would have to seek redress for its own injury. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016).

Accordingly, I am persuaded that the estate's Connecticut promissory estoppel claim is preempted as a collateral claim for benefits that could upset the federalized relationship among core ERISA entities. I will therefore dismiss the claim as to all remaining defendants.

### *The estate's request for leave to amend*

In its brief in opposition to Triple S's motion to dismiss, the estate briefly requests leave to file an amended complaint if I find that its allegations fall short. Doc. #37 at 7-8. The parties' prior scheduling order did not did not anticipate any need to file motions to join additional

---

[4] Rather than *McCulloch*, the facts of this case are closer to those of *Montefiore Medical Center v. Teamsters Local 272*, 642 F.3d 321 (2d Cir. 2011). There, a medical provider sued as assignee of its patients' benefits, *see id.* at 330, disputing pre-approval calls it had made to the patients' insurer. *Id.* at 332. The Court noted that where a pre-approval process was "*expressly required by the terms of the Plan itself*," it was "inextricably intertwined with the interpretation of Plan coverage and benefits," *ibid.*, and therefore subject to preemption.

parties or amend the pleadings, and the parties have waited to commence discovery until the resolution of these motions to dismiss. Doc. #31 at 5. Where a plaintiff wishes to amend a complaint after the deadline a scheduling order imposes for doing so, a court must balance the lenient policy toward amendment of Rule 15(a) against the policy of Rule 16(b) that a scheduling order should not be modified except for cause. *See BPP Ill., LLC v. Royal Bank of Scotland Grp. PLC*, 859 F.3d 188, 195 (2d Cir. 2017). If the estate still wishes to file an amended complaint, it should file any motion to do so within one week of this order, and defendants should file any opposition within one week thereafter.

## CONCLUSION

For the reasons set forth above, defendants' motions to dismiss (Doc. #26; Doc. #36) are GRANTED. The claim for ERISA benefits under § 502 (Count One) may proceed against all defendants except Triple S. All other claims are DISMISSED.

It is so ordered.

Dated at New Haven this 5th day of August 2019.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge